IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WATERTON POLYMER PRODUCTS USA, LLC; WATERTON POLYMER PRODUCTS, LTD.,<br><br>                Plaintiffs,<br><br>v.<br><br>EDIZONE, LLC,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER ON POST-TRIAL MOTIONS<br><br><br>Case No. 2:12-CV-17 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on the following post-trial motions: Plaintiffs' Rule 50(b) Motion for Entry of Judgment as a Matter of Law; Plaintiffs' Motion for Remittitur or, Alternatively, for a New Trial Under Rule 59(a); Defendant's Motion for Prejudgment and Post-Judgment Interest; Defendant's Motion for a Ruling that this Case is "Exceptional" for the Purpose of Awarding Attorney's Fees; Defendant's Renewed Motion for Injunctive Relief; and Plaintiffs' Motion to Stay. For the reasons discussed below, the Court will deny Plaintiffs' Motions, deny Defendant's Motion for Attorney's Fees, and grant Defendant's request for prejudgment and post-judgment interest and for injunctive relief.

I.  BACKGROUND

Plaintiffs filed this action seeking declaratory judgment that certain of their products do not infringe Defendant's US Patent No. 5,749,111 (the "'111 patent") and US Patent No. 6,026,527 (the "'527 patent"). Defendant filed a counterclaim, asserting claims of infringement.

1

The Court completed claim construction on December 20, 2013, largely adopting the claim construction proposed by Defendant. Thereafter, Plaintiffs sought to add a claim of invalidity, which request the Court denied on April 14, 2014.

On May 13, 2014, the Court entered summary judgment in favor of Defendant, finding that certain of Plaintiffs' products infringed the relevant claims of the patents-in-suit. Defendant then sought entry of judgment, seeking injunctive relief, damages, and interest. The Court denied Defendant's Motion without prejudice on September 30, 2014, and the case proceeded to trial.

A four-day jury trial was held from November 17, 2014, to November 20, 2014. At the conclusion of the trial, the jury awarded Defendant $625,000 in damages.

## II.  DISCUSSION

A.   RULE 50(b) MOTION

Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law when a party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[1] A party that has made a motion for judgment as a matter of law under Rule 50(a) prior to a jury verdict may renew that motion under Rule 50(b) after judgment is rendered.

"In [considering a motion for judgment as a matter of law], the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."[2] "Credibility determinations, the weighing of the

---

[1] Fed. R. Civ. P. 50(a)(1).

[2] *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990).

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[3]

The Tenth Circuit has made it clear that judgment as a matter of law is to be "cautiously and sparingly granted,"[4] and is only appropriate when there is no way to legally justify a jury verdict. Judgment as a matter of law is appropriate only "[i]f there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law,"[5] or if "the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[6] "Judgment as a matter of law is improper unless the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion."[7]

Plaintiffs argue that they are entitled to judgment as a matter of law because the jury's verdict is unsupported and excessive, and bears no relation to the *Georgia-Pacific* factors.[8]

Plaintiffs make three primary arguments: (1) Defendant relied on distinct and largely irrelevant third-party licenses and failed to acknowledge and account for the differences between those licenses and the hypothetical negotiation at issue; (2) Defendant failed to provide any quantification for Plaintiffs' marketing and promotional activities; and (3) the testimony of Mr. Tony Pearce concerning the value of the patents-in-suit was submitted in error. This final argument is addressed in more detail below in relation to Plaintiffs' Motion for Remittitur or, in

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).

[5] *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (quoting Fed. R. Civ. P. 50).

[6] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996).

[7] *Shaw v. AAA Eng'g & Drafting*, 213 F.3d 519, 529 (10th Cir. 2000).

[8] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

the Alternative, for a New Trial. Therefore, the Court will limit its discussion to Plaintiffs' first two arguments.

Plaintiffs first take issue with Defendant's reliance on various license agreements, arguing that they "are fundamentally dissimilar from the hypothetical negotiation the jury was charged with considering."[9] The Court dealt with this issue in denying Plaintiffs' Motion in Limine to Preclude Evidence or Argument Regarding Minimum Royalty Provisions. There, the Court held that the license agreements were sufficiently similar and thus could be admitted.[10] Plaintiff has provided little in the way of argument that is different from what was previously submitted.

Plaintiffs are certainly correct in arguing that there were differences between the license agreements and the hypothetical license at issue. However, the Federal Circuit has recognized that prior licenses "are almost never perfectly analogous to the infringement action" and "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."[11] "Testimony relying on licenses must account for such distinguishing facts when invoking them to value the patented invention."[12]

In this case, the differences between the license agreements and the hypothetical license were fully vetted during trial and those issues were clearly presented to the jury for its consideration. Even considering these differences, the jury entered a verdict in favor of Defendant and Plaintiffs have failed to show that this was erroneous.

---

[9] Docket No. 185, at 9.

[10] Docket No. 128.

[11] *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

[12] *Id.*

Plaintiffs further argue that the minimum royalty provisions in those agreements are dissimilar to the facts of this case because those license agreements countenanced active sales on the part of the licensee. This argument, however, ignores the fact that the hypothetical negotiation takes place at the time the infringement began and that both the patent owner and infringer were willing to enter into an agreement. It is illogical to believe that an infringer would agree to enter into a license agreement, paying money to license a patented technology, only to then avoid capitalizing on that agreement. Moreover, the minimum royalties in the license agreements are relevant to show what others were willing to pay to license the patents-in-suit, regardless of actual sales. Thus, the Court must reject this argument.

Plaintiffs next argue that Defendant failed to provide the jury with a valuation of Plaintiffs' alleged offers to sell and/or marketing activities. Plaintiffs, however, fail to point to anything that would require such evidence. Rather, the evidence of Plaintiffs' marketing activities was relevant to a number of the *Georgia-Pacific* factors, including, but not limited to, the extent Plaintiffs made use of the invention and the value of that use. The jury was properly instructed that it could consider such things in making its determination of a reasonable royalty.

Plaintiffs conclude by arguing that the jury's verdict is unsupported by the evidence. Plaintiffs focus on the limited infringing sales that were made, arguing that a reasonable royalty should be no higher than the profits they earned. While evidence of Plaintiffs' profits is relevant to the hypothetical negotiation inquiry, it is not the only evidence to be considered.[13] Plaintiffs' attempt to cap the reasonable royalty at their profits is erroneous. "That treatment incorrectly

---

[13] *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014).

replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened."[14]

Based on the above, Plaintiffs have failed to demonstrate that they are entitled to judgment as a matter of law. Therefore, this Motion will be denied.

B.     MOTION FOR REMITTITUR OR, ALTERNATIVELY, FOR A NEW TRIAL

Plaintiffs seek remittitur or, alternatively, a new trial, arguing that the jury's damage award was excessive. "[A]bsent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate."[15]  "[A] verdict will not be set aside on this basis unless it is so plainly excessive as to suggest that it was the product of such passion or prejudice on the part of the jury."[16]

Rule 59(a)(1)(A) provides that a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[17] The Tenth Circuit has stated that "[a] motion for new trial on the grounds that the jury verdict is against the weight of the evidence . . . involve[s] the discretion of the trial court . . . . The inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."[18]

---

[14] *Id.* at 772.

[15] *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981).

[16] *Id.*

[17] Fed. R. Civ. P. 59(a)(1)(A).

[18] *Black v. Heib's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986).

Plaintiffs argue that there are three reasons why the verdict is unsustainable. First, Plaintiffs argue that Tony Pearce was permitted to offer improper, irrelevant, and prejudicial testimony regarding the value of the patented invention. Second, the verdict is excessive in light of the evidence. Third, there were errors in the Special Verdict Form.

Plaintiffs' first argument concerns the testimony of Tony Pearce, the inventor of the patented invention. Specifically, Plaintiffs complain that Mr. Pearce was permitted to testify as to the value of the patented invention. The Court disagrees that Mr. Pearce's testimony was improper. However, even accepting Plaintiffs' argument that this testimony was erroneously admitted, Plaintiffs have failed to demonstrate that the admission of such testimony necessitates a new trial.

Plaintiffs' second argument asserts that the jury's damage award was excessive. As set forth above, a verdict will not be set aside unless it was so excessive that it shocks the judicial conscience and suggests that it was the product of passion or prejudice on the part of the jury. The verdict here is not so excessive as to necessitate it being set aside.

Plaintiffs' final argument takes issue with the verdict form. Plaintiffs argue that the jury should have been instructed to determine a royalty rate and apply that rate to the sales Plaintiffs made. Without this, Plaintiffs argue, "the form of verdict given invited the jury to simply set for an award, with no indication as to how that award was determined. As such, it does not comply with governing authority, potentially invites error, and would not allow for a post-trial determination of the sustainability of any such award."[19]

---

[19] Docket No. 186, at 9.

Plaintiffs' argument is unconvincing. Plaintiffs fail to account for the significant instruction the jury was given as to how to determine a reasonable royalty. While Plaintiffs may have wanted more in the verdict form, Plaintiffs have failed to demonstrate how the alleged deficiencies in the verdict form warrant a new trial. Moreover, as discussed above, while Plaintiffs' prior sales are relevant in determining a reasonable royalty, they are not the only evidence the jury may consider in determining a reasonable royalty. Therefore, the Court will deny Plaintiffs' Motion.

C.    MOTION FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

Defendant seeks prejudgment interest using Utah's statutory rate of 10% and seeks post-judgment interest under 28 U.S.C. § 1961(a).

35 U.S.C. § 284 states, in pertinent part: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."[20] The Supreme Court has held that, under § 284, "prejudgment interest should ordinarily be awarded" "absent some justification for withholding such an award."[21] However, § 284 does not require "the award of prejudgment interest whenever infringement is found."[22] The Court retains some measure of discretion.[23]

The purpose of prejudgment interest is "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty

---

[20] 35 U.S.C. § 284.

[21] *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 657 (1983).

[22] *Id.* at 656.

[23] *Id.* at 656–57.

agreement."[24] "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court."[25] In exercising this discretion, however, the Court must keep in mind the purpose of awarding prejudgment interest.[26]

Plaintiffs argue that Defendant's request should be denied because: (1) the verdict is excessive and is not supported by the evidence; and (2) Defendant's method for calculating prejudgment interest is improper and would result in overcompensation.

Plaintiffs' first argument relates to the arguments raised in their Rule 50(b) and Rule 59 Motions. For the same reasons set forth above, the Court rejects this argument.

Plaintiffs next argue that Defendant's method for calculating prejudgment interest is improper. Defendant has proposed that prejudgment interest be calculated beginning on April 15, 2011, which is the date of the first infringing sale in the United States. Plaintiffs argue that there is no support for the argument that the entire verdict would have become due on this date. Because interest should be calculated "from the time that the royalty payments would have been received,"[27] Plaintiffs argue that there is no sound basis for the Court to calculate prejudgment interest. This argument is based on Plaintiffs' assertion that the only proper way to calculate damages is to tie those damages to its infringing sales. However, as has been discussed, this is not the only way to calculate a reasonable royalty.

---

[24] *Id.* at 655.

[25] *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

[26] *Id.*

[27] *Gen. Motors*, 461 U.S. at 655–56.

Plaintiffs are correct that the verdict form does not clearly delineate how the jury reached their verdict and the jury could have reached a supportable verdict in a number of different ways. Defendant has provided a reasonable basis for calculating prejudgment interest based on that verdict. While Plaintiffs have lodged various complaints about that method, they have offered no alternative. Having carefully considered the arguments, the Court finds that Defendant's proposed methodology will ensure that Defendant is placed in as good a position as it would have been had Plaintiffs entered into a reasonable royalty agreement. Therefore, the Court will impose prejudgment interest at a rate of 10% per annum beginning April 15, 2011, along with post-judgment interest at the statutory rate.

D.   MOTION FOR ATTORNEY'S FEES

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[28] The Supreme Court has recently held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[29] This Court is to "determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances."[30]

Defendant asserts that it should be awarded attorney's fees because this is an exceptional case. In support, Defendant argues that Plaintiffs' case was substantively weak because: (1) there was no objectively reasonable belief that the patents-in-suit could not be infringed because

---

[28] 35 U.S.C. § 285.

[29] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).

[30] *Id.*

10

they were invalid; (2) there was no objectively reasonable belief that Plaintiffs' gel matrix products did not infringe the patents-in-suit; and (3) Plaintiffs acted in bad faith when it argued in opposition to summary judgment that its products did not exhibit buckling. Defendant also argues that Plaintiffs' manner of litigating this case was unreasonable because they continually presented a moving target. In particular, Defendant takes issue with Plaintiffs' belated attempt to raise invalidity as a defense and Plaintiffs' recent request for reexamination.

       1.       *Substantive Strength of a Party's Litigation Position*

Defendant first argues that Plaintiffs had a substantively weak litigation position because the defense of patent invalidity was not initially raised and, as will be discussed below, Plaintiffs were not ultimately permitted to raise this issue. However, Defendant has failed to explain how not raising a defense at the outset equates with a party's litigation position being substantively weak. As Plaintiffs explain, they initially focused their efforts on claim construction and non-infringement. Though Plaintiffs later sought to raise the issue of invalidity, their failure to do so initially does not make this case exceptional.

Defendant next argues that Plaintiffs' argument concerning non-infringement was unreasonable, especially in light of the Court's ruling on claim construction. However, Plaintiffs have presented evidence that they sought and received, and ultimately relied upon, the opinion of counsel that their products did not infringe the patents-in-suit. While the Court ultimately disagreed, it was not objectively unreasonable for Plaintiffs to rely on the opinion of counsel in asserting that their products did not infringe.

Finally, Defendant asserts that Plaintiffs' argument that its products did not exhibit "buckling" was unreasonable in light of Plaintiffs' own literature suggesting that their products

did, in fact, buckle. While a closer call than the other arguments, a careful review of the briefing on Defendant's Motion for Summary Judgment shows that Plaintiffs were merely forcing Defendant to carry their burden of demonstrating that they were entitled to judgment as a matter of law. Plaintiffs presented a declaration from an expert stating that certain testing would be required to determine whether Plaintiffs' products buckled. Plaintiffs' reliance on his opinion was not unreasonable. Further, though Plaintiffs' own brochure seems to demonstrate buckling—a fact relied upon by the Court in reaching its conclusion on summary judgment—this brochure was not dispositive and Plaintiffs were reasonable in contesting whether Defendant was entitled to summary judgment.

   2.   *Unreasonable Manner in Which the Case was Litigated*

Defendant also seeks attorney's fees based on the unreasonable manner in which this case was litigated. Defendant first argues that Plaintiffs' late attempt to raise invalidity as a defense was in bad faith and demonstrates unreasonable conduct.

The facts and circumstances surrounding Plaintiffs' attempt to bring an invalidity claim are set out in the Court's Memorandum Decision and Order Denying Plaintiffs' Motion for Leave to File Amended Complaint.[31] The Court denied Plaintiffs' request to raise a claim of invalidity, finding that Plaintiffs delayed in filing their Motion, that Defendant would be prejudiced, and that Plaintiffs acted in bad faith.

It is true that the Court denied Plaintiffs' Motion for Leave to File Amended Complaint and precluded Plaintiffs from asserting an invalidity defense. However, the fact that Plaintiffs brought such a Motion does not demonstrate that this case stands out from others with respect to

---

[31] Docket No. 59.

the unreasonable manner in which the case was litigated. While the parties appeared to have agreed at the outset of this litigation that invalidity would not be an issue in this case, Plaintiffs' failure to obtain a successful ruling on claim construction prompted a change of strategy. This is not uncommon. Moreover, the Court denied Plaintiffs' request to raise an invalidity defense. Thus, Defendant cannot realistically complain that they have been adversely affected by Plaintiffs' unsuccessful attempt to raise invalidity as a defense.

Defendant's final argument is that this case is exceptional because, shortly before trial, Mr. Wood sought reexamination of the claims that were found to be infringed. Defendant argues that, had it known that Plaintiffs would challenge the validity of those claims, it would have asserted other claims.

The fact that Plaintiffs sought reexamination is not enough on its own to make this case exceptional. However, the circumstances surrounding the reexamination are questionable and are a good representation of Plaintiffs' attempts to avoid final judgment. But even considering the history of this case, this action alone does not make this case exceptional. Therefore, the Court will deny Defendant's request for attorney's fees.

E.    RENEWED MOTION FOR INJUNCTIVE RELIEF

Defendant seeks a permanent injunction. The Court previously denied Defendant's request for injunctive relief, but did so without prejudice to Defendant reasserting that request after trial.

The Supreme Court has stated that, to be entitled to a permanent injunction, a plaintiff must demonstrate: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.[32]

### 1. Irreparable Injury and Lack of Adequate Remedy at Law

As it did previously, the Court will address the first two factors together.[33] Having considered the evidence presented, both in Defendant's previous Motion and at trial, the Court finds that Defendant has proven that it will suffer irreparable injury that cannot be adequately remedied absent the issuance of an injunction. Specifically, Defendant has shown that, absent an injunction, its relationships with its licensees will be disrupted and Defendant will not receive the benefits it would have otherwise received from its alliance partners, including, but not limited to, the loss of royalty payments and loss of market share. In addition, Defendant has produced evidence that at least one of its licensees may bring suit against it should Plaintiffs be granted a compulsory license.[34] Should this suit be successful, Defendant could be forced to return prior royalty payments and could lose the right to future royalties. In addition, any such suit would undoubtedly result in legal fees and costs that would be difficult to measure. Finally, Defendant has presented evidence that it will be forced to change its business model should an injunction not issue. As was discussed at length during the trial, Defendant's licensing model is based on exclusivity. Should it lose the ability to provide exclusive licenses, Defendant will suffer the above-described damages and may be forced to find other partners or create and sell product themselves. This could be especially difficult given the little life left on the patents.

---

[32] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[33] *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327 (Fed. Cir. 2008).

[34] Though not specifically discussed, allowing Plaintiffs to obtain a compulsory license could result in Defendant being in violation of the court order that resolved its prior dispute with ACTI.

Plaintiffs argue that Defendant has failed to show that Defendant will suffer irreparable injury or that the remedies available at law are inadequate. Plaintiffs argue that most of the harm will be suffered by Defendant's licensees, not Defendant itself. The Court disagrees. While Defendant has presented evidence that its licensees will suffer if an injunction is not issued, it has also presented evidence of its own irreparable harm.

Plaintiffs also argue that Defendant's evidence of harm is merely speculative. Again, the Court must disagree. The fact that the harm Defendant will suffer is contingent on certain events occurring does not make it speculative. The Court finds that Defendant has presented evidence that it faces real and substantial harm if an injunction is not issued.

Plaintiffs' final argument is that Defendant has failed to demonstrate the absence of an adequate remedy at law. Plaintiffs point to Defendant's consistent policy of licensing its patents. Defendant's policy of licensing its patents is a factor for the Court to consider in determining whether an injunction is appropriate. However, the fact that Defendant licenses its patents is not dispositive. Moreover, this argument fails to recognize the importance exclusivity plays in Defendant's business model and that allowing Plaintiff to obtain a compulsory license drastically interferes with this model.

Based on the evidence presented, the Court finds that Defendant has shown that it will suffer irreparable injury that cannot be remedied at law unless an injunction issues.

*2. Balance of Hardships*

Plaintiffs do not argue that they would suffer harm if an injunction were to issue, nor is there evidence from which the Court could find that Plaintiffs would suffer hardship. As discussed in its previous Order, Plaintiffs would be permitted to continue selling its gel matrix

products outside the United States and would be allowed to sell its non-infringing products. Therefore, this factor weighs in favor of the issuance of an injunction.

### 3.  *Public Interest*

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects."[35]  In this matter, the public interest would not be disserved by the issuance of an injunction.  Therefore, this factor too supports injunctive relief.  Thus, the Court will enjoin Plaintiffs from future infringement.

## III.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Rule 50(b) Motion for Entry of Judgment as a Matter of Law (Docket No. 185) is DENIED.  It is further

ORDERED that Plaintiffs' Motion for Remittitur or, Alternatively, for a New Trial Under Rule 59(a) (Docket No. 186) is DENIED.  It is further

ORDERED that Defendant's Motion for Prejudgment and Post-Judgment Interest (Docket No. 179) is GRANTED.  It is further

ORDERED that Defendant's Motion for a Ruling that this Case is "Exceptional" for the Purpose of Awarding Attorney's Fees (Docket No. 180) is DENIED.  It is further

ORDERED that Defendant's Renewed Motion for Injunctive Relief (Docket No. 177) is GRANTED.  It is further

ORDERED that Plaintiffs' Motion to Stay (Docket No. 227) is DENIED.

---

[35] *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 865 (Fed. Cir. 2010).

Defendant is directed to submit a proposed form of judgment in accordance with this Order within fourteen (14) days. Any objections must be filed within fourteen (14) days thereafter.

The hearing set for March 31, 2015, is STRICKEN.

DATED this 16th day of March, 2015.

BY THE COURT:

*signature*

Ted Stewart
United States District Judge

United States District Court
for the
District of Utah
March 16, 2015


******MAILING CERTIFICATE OF THE CLERK******

RE:   Waterton Polymer Products USA et al v. Edizone
      2:12-cv-00017-TS


Donald L. Dalton
DALTON & KELLEY PLC
PO BOX 58084
SALT LAKE CITY, UT  84158

Kristine E. Johnson
PARSONS BEHLE & LATIMER (UT)
201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT  84145-0898

Casey K. McGarvey
EdiZONE LLC
123 E 200 N
ALPINE, UT  84004

John N. Zarian
PARSONS BEHLE & LATIMER
800 W MAIN ST STE 1300
BOISE, ID  83702


_____
Becky L. Harris, Deputy Clerk